## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOSAID TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LSI CORPORATION and AGERE SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| LSI CORPORATION and AGERE SYSTEMS, INC., | ) | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 10-192-RGA-CJB |
| | ) | |
| MOSAID TECHNOLOGIES INC., LENOVO (UNITED STATES) INC., LENOVO GROUP LTD., and LENOVO (SINGAPORE) PTE. LTD., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |
| LENOVO (SINGAPORE) PTE. LTD., | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LSI CORPORATION and AGERE SYSTEMS, INC., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

## **MEMORANDUM ORDER**

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2012 JUL 20   AM 10: 29

Pending before the Court in this contract dispute is the issue of whether and to what extent to seal the transcript from oral argument proceedings that were held on April 24, 2012. For the reasons discussed below, the Court ORDERS that only those portions of the transcript that quote or discuss confidential financial terms of licensing agreements will be redacted.

### A.    Procedural Posture

On March 9, 2010, Plaintiff Mosaid Technologies Inc. ("Mosaid") filed a two-count complaint against Defendants LSI Corporation and Agere Systems, Inc. (collectively, "Defendants") for breach of express warranty and breach of a Patent Assignment Agreement that was executed in 2007 ("the 2007 PAA"). (D.I. 2)  Thereafter, Defendants filed their answer and two counterclaims seeking declaratory judgments of no breach of express warranty and no breach of the 2007 PAA against Mosaid. (D.I. 10)  Defendants also added Lenovo (United States) Inc., Lenovo Group Ltd., and Lenovo (Singapore) Ptd. Ltd. (collectively, "Lenovo") as counterclaim-defendants, asserting a third counterclaim seeking a declaration that Lenovo does not possess a license to any patent through operation of five patent license agreements that were executed from 1995–2005 among the parties and their predecessors-in-interest.  (D.I. 17 at ¶ 61)  Lenovo also asserted its own counterclaim for specific performance of certain license agreements.  (D.I. 31)

Four case-dispositive motions were filed on March 25, 2011.  (D.I. 87, 92, 93, 98) Mosaid moved for partial summary judgment in its favor on Count 1 of its Complaint and on Counts 1 and 3 of the Counterclaims filed by Defendants.  (D.I. 92)  Defendants moved for summary judgment in their favor on their Counterclaims 1 and 2 (D.I. 93) and on their Counterclaim 3 (D.I. 98).  Finally, Lenovo moved for summary judgment in its favor on its Counterclaim and on Count 3 of Defendants' Counterclaims.  (D.I. 87)  The Court heard oral

2

argument on the parties' summary judgment motions on April 24, 2012, which lasted more than

three hours. The resulting transcript ("the Transcript") spans 175 pages.

At oral argument, the parties discussed, referenced, and quoted from documents that had

been marked by one or more parties as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL"

pursuant to the Protective Order entered in this case on February 16, 2011.[1]  (D.I. 70, 74)  On

May 3, 2012, the parties jointly moved to seal the Transcript "pending the Court's determination,

following consideration of the parties' submissions, of which portions of the [T]ranscript shall

remain confidential." (D.I. 176)  In an Order dated May 3, 2012, the Court granted the parties'

joint motion, and ordered that:

> The parties, either jointly or individually, shall file with the Court
> proposed redactions to the [T]ranscript by no later than May 23,
> 2012. Any proposed redactions should be accompanied by a
> written submission supporting the . . . assertion that those portions
> of the [T]ranscript should be redacted and/or sealed, including
> explanation as to why good cause exists to believe that disclosure
> of those portions of the [T]ranscript would work a "clearly defined
> and serious injury" to the party. *Pansy v. Borough of Stroudsburg*,
> 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and
> citation omitted).

(D.I. 177 at 2 (emphasis omitted))  On May 23, 2012, the parties submitted their proposed

redactions. (D.I. 178, 179, 180)

Lenovo's proposed redactions comprise roughly 102 pages of the Transcript. (D.I. 180,

ex. A)  Lenovo's proposal is not supported by any explanation, except for a general statement

---

[1]      The Protective Order was entered by Judge Stewart Dalzell of the U.S. District
Court for the Eastern District of Pennsylvania, who was originally assigned this case in lieu of
the vacant judgeship in this District. On November 28, 2011, this case was reassigned to Judge
Richard G. Andrews. On January 23, 2012, Judge Andrews referred this case to me to hear and
resolve all pretrial matters.

that those "portions . . . are highly confidential, and therefore should be redacted and protected
from public disclosure." (D.I. 180 at 1)

Mosaid's proposed redactions comprise roughly 70 pages of the Transcript. (*See* D.I.
178) In support of these redactions, Mosaid filed a one-paragraph letter, asserting that "[g]ood
cause exists [to seal those portions of the Transcript] because the redactions are MOSAID's
confidential business information, including the confidential terms of the 2007 [PAA] and the
communications between MOSAID and [Defendants] leading to that agreement." (*Id.* at 1)
Mosaid also noted that it "redacted confidential information referenced by [Mosaid]'s counsel at
the hearing if the information was derived from confidential agreements and communications
produced by other parties in this case and designated 'Confidential' or 'Highly Confidential'
under the Protective Order." (*Id.* at 1)

Defendants' proposed redactions comprise roughly 54 pages of the Transcript. (D.I. 179,
ex. A) Unlike Mosaid and Lenovo, Defendants submitted a three-page letter-brief in support of
their proposed redactions. Defendants identify three categories of proposed redactions: (1)
confidential financial information and licensing strategy; (2) terms of patent licenses and other
agreements to which one or both of Defendants are parties; and (3) terms of third-party
agreements that contain information relating to intellectual property rights. (D.I. 179 at 2)
Generally speaking, Defendants argue that if this information is disclosed to the public, then it
could be used by competitors to harm Defendants' standing in the marketplace. (*Id.* at 3)
Defendants allege that this harm outweighs any public interest in access to this information,
particularly given that this is a case involving private litigants. (*Id.*)

## B.    Legal Standard

The public has a common law right of access to judicial proceedings and records, as well as a recognized interest in observing, participating in, and commenting on court events. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 677–78 (3d Cir. 1988) (noting that the public's interest in access is "beyond dispute") (internal quotation marks and citation omitted); *accord United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984).   The exercise of this right to access, among other benefits, "promotes public confidence in the judicial system by enhancing the . . . quality of justice dispensed by the court" and "diminishes possibilities for injustice, incompetence, perjury and fraud" while "provid[ing] the public with a more complete understanding of the judicial system and a better perception of its fairness." *Littlejohn*, 851 F.2d at 678 (citations omitted). As such, there is a strong presumption in favor of public access to all judicial records and documents, including "transcripts, evidence, pleadings, and other materials submitted by litigants." *Martin*, 746 F.2d at 968 (internal quotation marks and citations omitted).

That presumption is not absolute, however.   Every court has inherent supervisory power, and the Third Circuit has held that courts may exercise that power to deny access to judicial records, for example, "where they are sources of business information that might harm a litigant's competitive standing." *Littlejohn*, 851 F.2d at 678.   Indeed, the Federal Rules of Civil Procedure empower courts to make any order that justice requires to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense," including "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."   Fed. R. Civ. P. 26(c).

"[G]ood cause must be demonstrated to justify [an] order" redacting or sealing a judicial

5

transcript. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citations omitted).

To establish good cause, the party seeking redaction must show that "'disclosure will work a

clearly defined and serious injury to [that party]. The injury must be shown with specificity.'"

*Id.* (quoting *Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). "Broad

allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support

a good cause showing." *Pansy*, 23 F.3d at 786 (internal quotation marks and citations omitted);

*see also Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 395 (D. Del. 2000) (noting

that the "good cause standard" requires an "exacting type of analysis" where the party seeking to

seal judicial records must demonstrate that there is "a compelling interest" in shielding those

materials from public view). Assessing whether good cause exists to seal a judicial transcript

generally involves a balancing process, in which courts weigh the harm of disclosing information

against the importance of disclosure to the public. *See Pansy*, 23 F.3d at 787.[2]

## C.    Discussion of Transcript and the Parties' Proposed Redactions

### 1.    Lenovo and Mosaid's Proposals

---

[2]    To that end, the *Pansy* Court outlined a series of factors that may be considered in evaluating whether "good cause" exists: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose; (3) whether disclosure will cause embarrassment to a party; (4) whether the information to be disclosed is important to public health and safety; (5) whether sharing the information among litigants will promote fairness and efficiency; (6) whether the party benefitting from the order is a public entity or official; and (7) whether the case involves issues important to the public. 23 F.3d at 787–91. None of the parties here addressed the application of these seven factors to the proposed redactions, and the Court notes that they are "neither mandatory nor exhaustive." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). Indeed, several of these factors—such as the issue of "sharing" information among litigants or whether the information is being "sought" for legitimate purposes—are inapplicable to the present circumstances. Although the Court has not explicitly considered all of these factors for each category of proposed redactions, the Court is mindful of the competing public and private concerns that those factors are intended to encapsulate, and has weighed those interests accordingly in its analysis below.

Despite the Court's directive in its May 3rd Order, neither Lenovo nor Mosaid attempted to articulate with specificity any "clearly defined and serious injury" that would result if their proposed redactions were not accepted. *See Pansy*, 23 F.3d at 786. Instead, those parties simply relied upon the fact that certain materials discussed at oral argument were designated as Confidential or Highly Confidential during discovery. This is the sort of "broad allegation," not specific to the content of any information discussed at the oral argument, which is insufficient to justify shielding presumptively public proceedings from public view. *See id.* Given the extent of the redactions sought—nearly 40% of the Transcript in Mosaid's case, and nearly 60% of the Transcript in Lenovo's case—their failure to articulate a specific, clearly defined injury that would result from disclosure renders their requests particularly inadequate. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, Civil Action Nos. 08-1331 (DMC), 08-2137 (DMC), 2010 WL 2710566, at *1, 5–6 (D.N.J. July 7, 2010) (noting that "wholesale sealing of [a judicial] transcript is usually inappropriate").

Mosaid and Lenovo's position appears to be that any mention of a document that has been designated as "Confidential" or "Highly Confidential" under the Protective Order is sufficient to close the otherwise public proceedings of oral argument. The Court's reading of the Protective Order is not so broad. The Protective Order is designed primarily to govern the exchange of the tens of thousands of documents requested and produced during discovery—the vast majority of which will never be filed as exhibits to any motions or introduced during judicial proceedings. (*See, e.g.*, D.I. 70 at 1 (noting that the Protective Order governs "confidential, proprietary, and/or trade secret information relevant to the subject matter of this lawsuit *that would otherwise be subject to discovery*) (emphasis added)) Parties frequently craft protective

orders to provide some level of protection against unwarranted disclosure of confidential or sensitive information, particularly when that information is being shared with an adversary in the litigation process. *See, e.g., In re Grand Jury*, 286 F.3d 153, 161 (3d Cir. 2002) (noting that "[p]rotective orders are limited instruments that are quite useful in facilitating the efficient disposition of litigation in the many civil cases that involve . . . sensitive commercial or other private information"); *accord Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1123 n.19 (3d Cir. 1986) ("Umbrella protective orders, carefully drafted to suit the circumstances of the case, greatly expedite the flow of discovery material . . . .") (internal quotation marks and citations omitted). Indeed, the Third Circuit has noted that the strong presumption of public access to judicial proceedings and records does not apply to documents that "have not been 'filed with . . ., [or] interpreted or enforced by the district court.'" *LEAP Sys., Inc. v. MoneyTrax Inc.*, 638 F.3d 216, 220 (3d Cir. 2011) (quoting *Pansy*, 23 F.3d at 781).

However, once the time comes for the Court to substantively engage with the issues in this litigation, it must view proposed redactions relating to public proceedings in a different light.[3] *See, e.g., Pansy*, 23 F.3d at 790 n.26 (noting that while "blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification") (internal quotation marks and citation omitted).[4] Here, the subject-matter of the parties' request for sealing is two degrees removed

---

[3]     The Protective Order does not specifically address how the Court should apply its terms to judicial proceedings or transcripts. In any event, material designated as "Confidential" or "Highly Confidential" pursuant to the Protective Order may be disclosed to "any other persons upon such terms and conditions as . . . the Court by order directs." (D.I. 70 at 7, 9)

[4]     Some courts have outright refused to redact civil judicial proceedings (except to seal sensitive personal information). *See, e.g., TriQuint Semiconductor, Inc. v. Avago Techs.*

from the discovery process—it concerns (1) multiple, potentially case-dispositive motions that (2) were the subject of argument on the record before this Court.  Now that the Court is faced with the question of sealing a *judicial record*, as opposed to discovery materials, the parties cannot rely solely on a blanket protective order to justify sealing of a presumptively public transcript of arguments regarding the substantive resolution of this case.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (noting that "the strong presumption" in favor of public access applies with particular force to judicial records relating to summary judgment because those proceedings "adjudicate[] the substantive rights [of parties] and serve[] as a substitute for trial").[5]  Because neither Lenovo nor Mosaid have attempted to make that particularized showing of good cause, their submissions fail to justify any of the proposed redactions.[6]  *See, e.g., Pfizer*, 2010 WL 2710566, at *5–6 (denying a motion to redact a transcript where the requests to seal were "not supported by a brief or particularized argument," were "overbroad and only supported by general allegations of harm," and left "unexplained how the disclosure of this type of information could result in a specific and serious injury"); *accord In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289 (D. Del. 2012) (denying a motion to seal where the plaintiff "applied for an order sealing his brief wholesale, but [made] no attempt to

---

*Ltd.*, No. CV-09-1531-PHX-JAT, 2012 WL 1432519, at *10 (D. Ariz. Apr. 25, 2012) (stating that "no portion of the trial will be conducted under seal" in a patent infringement case, and "none of the trial transcripts or exhibits will be sealed," so "the parties should not expect the Court to grant after-the-fact requests to redact any portions of the trial transcript").

[5]     Judge Dalzell highlighted that the Protective Order applies only "to the extent that it complies with [*Pansy*] and its progeny." (D.I. 74 at 2)

[6]     As discussed below, the Court finds that certain portions of the Transcript should be redacted.  All of those portions were identified in Defendants' proposed redactions.

establish good cause," such that the application fell "well short of the specificity a good cause showing requires").

### 2.   Defendants' Proposed Redactions

In contrast to Mosaid and Lenovo, Defendants proposed less extensive redactions regarding multiple categories of allegedly confidential information.[7]  In accordance with the Court's prior directive, Defendants included citations to the corresponding portions of the Transcript and offered explanations of the potential harm that they allege would result from disclosure.  The Court considers each category of allegedly confidential information in turn.

The first category of information Defendants ask to be redacted is also the most limited—it pertains solely to "confidential financial information and licensing strategy."  These proposed redactions span roughly 28 lines of the Transcript, and include information regarding monies paid by the parties pursuant to the licensing agreements-at-issue or to market share information relating to a party's patent licensing activity.  (D.I. 179 at 2 & n.1)  If this information was disclosed, Defendants argue that "competitors and potential licensing targets [would gain] access to . . . pricing, finances, and patent valuation . . . [which] could [be] use[d] to undercut . . . future licensing negotiations."  (*Id.* at 3)  The Court agrees that this is the type of information which, while largely incidental to the substantive issues in this case, could cause real and serious harm to the parties' future negotiations if disclosed to competitors.  It is also the sort of material that courts have frequently redacted.  *See, e.g.*, Fed. R. Civ. P. 26(c)(1)(G)

---

[7]    Although Defendants' proposed redactions are roughly half the length of those proposed by Lenovo, they nonetheless implicate nearly one-third of the Transcript.  None of the parties cite any case where sealing of a civil judicial transcript on such a scale was permitted. When courts take the atypical step of sealing civil transcripts, they typically seal lines of the transcript, not dozens of pages.

(identifying "confidential . . . commercial information" as one category of information that can be protected via court order); *Boucher v. First Am. Title Ins. Co.*, No. C10–199RAJ, 2011 WL 5299497, at *5 (W.D. Wash. Nov. 4, 2011) (granting a motion to seal certain documents where the only proposed redactions related mainly to "pricing terms" in license agreements, for which there was "no compelling need for disclosure"); *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2007 WL 3232267, at *3–4 (N.D. Cal. Nov. 1, 2007) (granting a request to redact "financial terms" from a contract that were "not directly relevant to the merits of the underlying case"); *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159 (D. Del. 1999) (shielding "a nonparty competitors' sales and marketing plans, financial forecasts, margin, pricing, cost and customer information" from disclosure).

Defendants also seek redactions of two additional categories of information from the Transcript, both of which purportedly involve the "terms" of contracts and agreements that the parties have asked the Court to interpret in this litigation. (D.I. 179 at 2) As an initial matter, it appears that Defendants' proposal goes beyond merely redacting the "terms" of the agreements that were discussed at oral argument. Defendants propose that certain basic foundational information about the agreements themselves be redacted, including: (1) the existence of the agreements-at-issue; (2) their effective dates; (3) the parties to the agreements; (4) the number of patents subject to the agreements; and (5) references to section numbers of those agreements. (*See, e.g., id.*, ex. A at 57–63)[8]  The Court fails to discern any "clearly defined and serious

---

[8]      For instance, Defendants have proposed redacting a sentence from the oral argument that reads "1.01 is the grant," and another that reads "So what you have here is in 2.03, the discussion on the divestiture." (D.I. 179, ex. A at 19–20)  Merely knowing where certain topics are addressed in an agreement—particularly one that has not been disclosed in its entirety—could not cause a serious and specific competitive disadvantage to any of the parties.

injury" that would result from disclosing this information. It is derived from documents that are the very subject of the parties' summary judgment motions, and that all were executed years ago. Making public the existence of these agreements or this very basic information about their scope would not result in a competitive disadvantage to the parties. *See, e.g., Vista India, Inc. v. Raaga, LLC*, Civil Action No. 07-1262 (HAA), 2008 WL 834399, at *4 (D.N.J. Mar. 27, 2008) (denying a motion to seal "information concerning the names or dates of the parties and agreements" and finding that public awareness of the existence of agreements would not result in any "competitive disadvantage").

In addition, not all terms of the agreements that underlie this dispute are created equal. As noted above, terms that relate to pricing, valuation, monetary payments, and financial information should be protected. Courts also typically permit redacting information in licensing agreements or other documents that relates to trade secrets or confidential technologies. *See, e.g., Joint Stock Soc'y*, 104 F. Supp. 2d at 396 (noting that most of the materials that were sealed by a special master contained "legitimate trade secrets" such as confidential "vodka formulas, consumer research studies, strategic plans, potential advertising and marketing campaigns or financial information"); *accord In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 658 (D.N.J. 2004) (sealing summary judgment papers that contained information about "the parties' products, research and development, processes, secret chemical formulas, [and] the parties' suppliers"). No trade secrets that relate to the parties' patented technology were discussed at the oral argument. Indeed, none of the parties argue that the terms of the licensing agreements themselves—whether discussed at the oral argument or not—constitute trade secrets. *See, e.g., Littlejohn*, 851 F.2d at 685 (noting that "documents do not contain trade secrets merely because

12

they are confidential," and distinguishing between legitimate trade secrets and "non-trade secret but confidential business information," the latter of which is "not entitled to the same level of protection from disclosure").

The non-financial contract terms discussed at oral argument and in the parties' summary judgment motions all concern whether entities divested from signatories had or could obtain rights to the licensed intellectual property, including whether an additional, separate written instrument needed to be executed before such rights would be conferred. This is the core of the parties' dispute, and the reason they have sought relief in this forum. As part of that dispute, the parties disagree about the meaning of words in the agreements, such as "notwithstanding," "with Agere," and "subject to." They also argue about when "notice" under the agreements should be deemed effective, and whether prior licensing arrangements should have been disclosed in the 2007 PAA. Yet, Defendants have proposed that any discussion of those terms be redacted, for two reasons: (1) "LSI-Agere's interpretation of the agreements would harm LSI-Agere's competitive standing" and (2) this information "solely involves the rights of the parties in this case and do[es] not involve matters of legitimate public interest." (*See* D.I. 179 at 3)

As to the Defendants' first argument, the Court is not persuaded that disclosure of the parties' interpretations of their patent license agreements would result in serious competitive injury. Most of these agreements were entered into more than a decade ago, covering patents that, in some cases, have already expired (or will shortly expire). Indeed, the most recent agreement-at-issue is more than five years old. Defendants have failed to demonstrate how the disclosure of non-financial terms from such agreements could cause a serious injury to current or future patent license negotiations. *See Opperman v. Allstate New Jersey Ins. Co.*, Civil No.

13

07–1887 (RMB/JS), 2009 WL 3818063, at *9 (D.N.J. Nov. 13, 2009) (noting that the "age and

attenuated bearing" of business documents on "current operations strongly mitigate[s] [any

private] interest in maintaining their confidentiality"). Instead, the parties apparently do not want

any of the contract interpretation positions that they have been taken to be disclosed to the public,

because then their ability to take a different position in future disputes would be restricted. This

is not the sort of competitive disadvantage envisioned by *Pansy*, and is insufficient to outweigh

the strong presumption in favor of public access. *Accord Kamakana v. City and County of

Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records

may lead to . . . exposure to further litigation will not, without more, compel the court to seal its

records.") (citation omitted).

  The parties have sought relief in a public forum, and yet their proposed redactions would

obscure any discussion of the actual nature of the parties' dispute. There are other forums—such

as arbitration—available if parties wish to protect all of this type of information from public

view. *See, e.g., Global Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*, Nos. 07 Civ.

8196(PKC), 07 Civ. 8350(PKC), 2008 WL 1805459, at *1 (S.D.N.Y. Apr. 24, 2008) (noting that

one of the "princip[al] advantages of arbitration" is "confidentiality"). Yet if the Court were to

grant Defendants' application to seal all portions of the transcript that make any reference to the

terms of the underlying agreements, it would effectively convert itself into an arbitral tribunal,

where the presumption is that all materials will be kept confidential and not be disclosed to the

public. It is therefore unsurprising that no party to this litigation has cited a single instance where

a judge in this District has redacted a civil judicial transcript in the manner requested here.

  Indeed, at least one court has specifically resisted efforts to impose arbitration-style

confidentiality on judicial proceedings. In *In re Eastman Kodak Company's Application*, 2010 WL 2490982, at *1–2 (S.D.N.Y. June 15, 2010), Eastman Kodak Company ("Kodak") brought a breach of contract claim, but sought permission to file certain documents under seal, so that it could "shield itself from counterclaims that [it] breached the agreement by resorting to the public courts." *Id.* at *1. The district court noted that "Kodak's request to keep certain information redacted . . . stems entirely from private agreements with [the parties opposing it in the litigation] to keep the terms of their license agreements confidential." *Id.* However, the court found that the material that Kodak proposed to redact was "not peripheral" and that it "concern[ed] the parties to th[ose] lawsuits and the alleged breaches of license agreements." *Id.* at *1. The *Kodak* court found that, given the nature of the redactions proposed, "[i]n essence, Kodak seeks to turn the federal court into its own arbitral forum." *Id.* Noting that, unlike an arbitral panel, "a federal court is a transparent forum," the *Kodak* court refused to permit wholesale sealing of information and contentions relating to the license agreements.[9] *Id.*

As the *Kodak* court recognized, civil judicial proceedings cannot effectively operate if huge swaths of judicial opinions and hearing transcripts are subject to redaction. As but one illustration of this reality, at oral argument the parties' counsel discussed the impact of *In re Read-Rite Corp.*, 393 F. App'x 536 (9th Cir. 2010) ("*Read-Rite*") on this matter. (*See, e.g.*, D.I. 179, ex. A at 70) Yet, all the parties here have proposed that the Court redact the discussion of how that case should (or should not) apply to the present facts, because it necessarily reveals some of the terms of the underlying license agreements in this case. In order for courts to "talk"

---

[9]     The only type of redaction that the *Kodak* court withheld judgment on related to a "royalty rate." *Kodak*, 2010 WL 2490982, at *2.

to litigants and for the public to fully understand a court's precedent, how prior decisions were arrived at, and the similarities among cases, courts need to disclose at least some of the terms of the agreements—even confidential ones—that are the subject of the adjudication. Otherwise, our opinions and transcripts would become useless and devoid of context, such that even the basic nature of disputes would be indiscernible.[10]  Indeed, courts have recognized that even terms of highly confidential agreements—such as settlement agreements—may need to be disclosed, such as "when the parties seek interpretative assistance from the court or otherwise move to enforce a provision [of that agreement]." *See, e.g., MoneyTrax, Inc.*, 638 F.3d at 220 (internal quotation marks and citations omitted).  Having sought "interpretative assistance" from the Court as to several licenses, the parties cannot now keep secret the basic context of that dispute or their primary contentions as to how the Court should resolve that dispute.[11]  *See, e.g., SV Int'l, Inc. v. Fu Jian Quanyu Indust. Co.*, 820 F. Supp. 2d 677, 680 n.1 & 680–81 (M.D.N.C. 2011)

---

[10]    *Read-Rite* involved disputed contractual provisions that are very similar to those at issue here.  Had the Ninth Circuit and the lower federal courts in *Read-Rite* sealed judicial records in the manner that the parties have here requested, neither the Court nor the parties would have been able to discuss *Read-Rite*'s impact on this case in the first place.

[11]    Although no party has cited it, the Court notes that the *Vista India* decision (cited above for a different proposition) is distinguishable from the present facts on this basis.  In that case, the Court sealed roughly five pages of a transcript of oral argument on a motion for a preliminary injunction where the confidential terms of license agreements were discussed.  2008 WL 834399, at *4–5.  But in denying the motion for a preliminary injunction, the Court noted that the issue of license terms was "irrelevant" to the motion it was considering, and that while the "colloquy" regarding those terms "might have been time well spent in a copyright action, this [case] is about trademark infringement." *Vista India v. Raaga, LLC*, 501 F. Supp. 2d 605, 616 (D.N.J. 2007).  Here, the opposite is true—the license terms discussed at oral argument are *directly relevant* to the parties' dispute—indeed, they *are* the dispute. *See, e.g., Flexsys Am. LP v. Kumho Tire U.S.A., Inc.*, No. 5:05CV156, 2010 WL 2813423, at *3 (N.D. Ohio July 15, 2010) (agreeing to revise a Memorandum Opinion to make indirect reference to certain details regarding party's proprietary technology, but only "inasmuch as it is not necessary for an understanding of the court's ruling on summary judgment").

(disclosing portions of a confidential agreement "that [were] integral to [the court's] decision on

the pending motion" while redacting other portions that did not "materially affect [its] analysis").

As for Defendants' second argument—that this case does "not involve matters of

legitimate public interest"—Defendants correctly note that *Pansy* emphasizes that cases

involving governmental officials and operations implicate particularly important public access

interests. 23 F.3d at 788. However, that does not mean that the public has no legitimate interest

in the judicial proceedings among the parties here. As the Third Circuit, citing Justice Oliver

Wendell Holmes, put it:

> It is desirable that the trial of civil causes should take place under
> the public eye, . . . not because the controversies of one citizen
> with another are of public concern, but because it is of the highest
> moment that those who administer justice should always act under
> the sense of public responsibility, and that every citizen should be
> able to satisfy himself with his own eyes as to the mode in which a
> public duty is performed.

*Publicker*, 733 F.2d at 1069 (internal quotation marks and citation omitted); *accord Opperman*,

2009 WL 3818063, at *9 (noting that "the public maintains a strong general interest in the

judiciary's transparency—namely, promoting trustworthiness of the judicial process, curbing

judicial abuses, and providing the public with a more complete understanding of the judicial

system and the fairness it seeks to promote"). As such, the public interest in having access to the

basic contours of this dispute—at least as set forth in the Transcript of oral argument

proceedings—outweighs any privacy interests of the parties.

**D.      Conclusion**

At all relevant stages, the Court has endeavored to ensure that the contents of the

Transcript not be made public until the parties have had a full and fair chance to be heard on the

issue of public accessibility.  The Court notes that its ruling in this Memorandum Order applies only to unsealing portions of the Transcript itself.  The text and content of the underlying documents will, except to the extent necessary to give context to the Court's discussion, be maintained under seal, thus minimizing the public exposure of information to only those terms of agreements that are actually relevant to the parties' dispute here.[12]

For the foregoing reasons, and for good cause shown, the Court ORDERS that the following portions of the Transcript shall be sealed: pg. 15, lines 3–6; pg. 34, line 22; pg. 45, lines 8–9, lines 20–21; pg. 47, line 12; pg. 59, line 14, line 17.  A publically available version of the Transcript shall be issued on or after **July 30, 2012** with the above-identified portions redacted.

Dated: July 20, 2012

_Christopher J. Burke_

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[12]    Although several of the underlying documents were visible during the parties' respective presentations at oral argument, the Transcript does not reflect the contents of those documents, except insofar as particular terms need to be construed to resolve the parties' dispute.

18