IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| MOSAID TECHNOLOGIES INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| LSI CORPORATION and AGERE SYSTEMS, | : |
| INC., | : |
| | : |
| Defendants. | : |
| | : |

| LSI CORPORATION AND AGERE SYSTEMS, | : |
| INC., | : |
| | : |
| Counterclaim-Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| MOSAID TECHNOLOGIES INC., | : |
| LENOVO (UNITED STATES) INC., | : |
| LENOVO GROUP LTD., and | : |
| LENOVO (SINGAPORE) PTE. LTD., | : |
| | : |
| Counterclaim-Defendants. | : |
| | : |

Civil Action No. 10-192-RGA-CJB

| LENOVO (SINGAPORE) PTE. LTD., | : |
| | : |
| Counterclaim-Plaintiff, | : |
| | : |
| v. | : |
| | : |
| LSI CORPORATION and AGERE SYSTEMS, | : |
| INC., | : |
| | : |
| Counterclaim-Defendants. | : |

## MEMORANDUM OPINION

Henry C. Bunsow, Esq. (argued), BUNSOW DE MORY SMITH & ALLISON LLP, San
Francisco, CA; Philip A. Rovner, Esq., POTTER ANDERSON & CORROON, LLP,
Wilmington, DE.

> Attorneys for Plaintiff/Counterclaim-Defendant Mosaid Technologies, Inc.

Daniel S. Young, Esq. (argued), KILPATRICK TOWNSEND & STOCKTON LLP, Denver, CO;
John W. Shaw, Esq., SHAW KELLER LLP, Wilmington, DE.

> Attorneys for Defendants/Counterclaim-Plaintiffs LSI Corporation and Agere Systems,
> Inc.

Jennifer A. Trusso, Esq. (argued), SHEPPARD MULLIN RICHTER & HAMPTON, Costa
Mesa, CA; Frederick L. Cottrell, III, Esq., RICHARDS, LAYTON & FINGER, P.A.,
Wilmington, DE.

> Attorneys for Counterclaim-Defendants Lenovo (United States) Inc., Lenovo Group Ltd.,
> and Lenovo (Singapore) Pte. Ltd.

March 29, 2013

*Kuhand G. Andrews*
ANDREWS, U.S. DISTRICT JUDGE:

Mosaid filed the instant action against LSI and Agere on March 9, 2010 for breach of express warranty and breach of a 2007 patent assignment agreement (the "2007 PAA")[1]. (D.I. 2). LSI and Agere counterclaimed against Mosaid, seeking declaratory judgments of no breach of express warranty and no breach of the 2007 PAA. (D.I. 10). LSI and Agere also added Lenovo as counterclaim-defendant and asserted a third counterclaim seeking a declaration that Lenovo does not possess a license to any patents under the 1995 PLA, the 1999 PLA, the 2000 Agreement, the 2002 PLA, and/or the 2005 PLA. (D.I. 17 at ¶ 61). In response, Lenovo asserted a counterclaim for specific performance. (D.I. 31).

The parties filed four case dispositive motions seeking summary judgment. (D.I. 87, 92, 94, 98). The motions were fully briefed. (D.I. 123, 124, 126, 127, 129, 130, 155, 156). On January 23, 2012, the Court referred this case to Magistrate Judge Burke to hear and resolve all pre-trial matters, including the resolution of case dispositive motions. Magistrate Judge Burke heard oral argument on the cross motions for summary judgment on April 24, 2012. On July 20, 2012, Magistrate Judge Burke issued a Report and Recommendation ("R and R") (D.I. 185), recommending that "the Court grant partial summary judgment in Defendants' favor, by declaring that Agere has not breached an express warranty of the 2007 PAA with respect to Matsushita, and that none of the Lenovo entities were licensed to any of the Assigned Patents by virtue of the 1995 PLA, the 1999 PLA, or the 2005 PLA" and "deny all other aspects of the parties' motions for summary judgment." (D.I. 185 at 75).

---

[1]     For ease of reference, the Court will use the same defined terms as set forth in the Report and Recommendation unless otherwise noted.

1

The parties have filed multiple objections, and responses thereto, in connection with the R and R. (D.I. 191, 192, 193, 200, 201, 202, 203). The Court held oral argument on the objections on February 14, 2013. (D.I. 252). For the reasons that follow, the court will adopt in part and overrule in part the recommendations made by the Magistrate Judge.

## I. BACKGROUND

The Court adopts the background set forth in the R and R but will provide a brief summary of the relevant facts here. On February 21, 2007, Mosaid and Agere executed the 2007 PAA, transferring Agere's entire right, title, and interest in the approximately twenty-three Assigned Patents to Mosaid. (D.I. 100, Ex. 1). Agere represented and warranted in the 2007 PAA that certain entities had a license agreement covering some or all of the Assigned Patents. (*Id.* at § 5.1(e) and Exhibit D, Table 1). Agere also represented and warranted that certain entities did not have a license agreement for any of the Assigned Patents. (*Id.* at § 5.1(f) and Exhibit D, Table 2). Lenovo is among the entities listed as not having a license agreement with Agere. (*Id.* at Exhibit D, Table 2).

The Assigned Patents had been subject to several agreements prior to the transfer to Mosaid, including a series of patent cross-license agreements between IBM on the one hand and AT&T and its successor entities on the other hand. The R and R describes these agreements more fully. (D.I. 185 at 4-9). For purposes of this opinion, the relevant agreements are the 1995 PLA (between AT&T and IBM), the 1999 PLA (between LSI and IBM), the 2000 Agreement (between IBM and Lucent), and the 2002 PLA (between IBM and Agere).[2]

---

[2]    There is also a fifth agreement involving IBM described in the R and R – the 2005 PLA. LSI and Agere moved for partial summary judgment that Lenovo did not have license rights under the 2005 PLA. (D.I. 98 at 1). The Magistrate Judge concluded that no reasonable

2

In general terms, it appears that Agere acquired the Assigned Patents at various times from AT&T and its successor entities. (D.I. 17 at 16, ¶44). The main issue is whether pursuant to the various cross-license agreements, AT&T and its successor entities provided licenses to IBM's successor entities, in particular, Lenovo, so that Agere's representation to Mosaid that Lenovo did not have a license was false.

On April 30, 2005, IBM divested the global business of its personal computing division to Lenovo. (D.I. 17 at 16, ¶ 46). Following the divestiture transaction, Betty E. Ungerman, IBM's outside counsel, prepared correspondence to several parties on behalf of IBM and Lenovo. In a June 1, 2005 letter addressed to the general counsel of LSI, Ms. Ungerman requested that LSI enter into a new patent cross-license agreement with Lenovo on terms and conditions substantially the same as the 1999 PLA. (D.I. 100, Ex. 28 at 2). The June 1, 2005 letter also noted that execution copies to memorialize the new license agreement would be sent to LSI "in the coming weeks." (*Id.*). Lenovo's counsel sent LSI a draft of a proposed new patent cross-license agreement on November 18, 2005 and followed up again on April 24, 2006. (D.I. 90 at Ex. 15 and Ex. 16). It is undisputed that the parties never signed the agreement.

Ms. Ungerman also prepared two letters, one to Agere and one to Lucent, dated June 23, 2005. The June 23, 2005 letter to Agere requested that Agere enter into a new patent cross-license agreement pursuant to the 2002 PLA and, like the June 1, 2005 letter, noted that execution copies would be sent "in the coming weeks." (D.I. 89, Ex. 8 at 1-2). The June 23,

---

jury could conclude that Lenovo has license rights to any of the Assigned Patents under the 2005 PLA. Mosaid and Lenovo did not object to this portion to the R and R. Accordingly, the Court will grant partial summary judgment in Agere's favor on count 3 of its counterclaim as it relates to the 2005 PLA.

3

2005 letter to Lucent was nearly identical but referenced the 1995 PLA and the 2000 Agreement, rather than the 2002 PLA. (D.I. 89, Ex. 9). Again, there is no record evidence that any such execution copies were sent to Lucent or Agere in the weeks following. Agere concedes that the June 23, 2005 letter to Agere was received in its Allentown, Pennsylvania mailroom, but it asserts that no one in its legal department ever saw a copy of the letter. (D.I. 252 at 44-45).

## II.  OBJECTIONS

Lenovo objects to the R and R on the basis that the Magistrate Judge's application of the *Winston*³ factors constituted error. (D.I. 192 at 1). Lenovo argues instead that the "sole issue is whether these Agreements . . . mandated that an *additional* written agreement be entered into with Lenovo in order for a license to be effective." (*Id.* at 3). Mosaid also objects to the R and R on the basis that the Magistrate Judge's application of the *Winston* factors was erroneous. (D.I. 193 at 9). Mosaid further objects to the Magistrate Judge's construction of "license agreement with Agere" in the 2007 PAA.⁴

LSI and Agere also object to the R and R. LSI and Agere assert that the R and R properly applied the *Winston* factors but reached the wrong conclusion. LSI and Agere also argue that the R and R incorrectly concluded that summary judgment relating to the 2000 Agreement and 2002 PLA is not appropriate. Finally, LSI and Agere argue that the R and R incorrectly concluded that there is a triable question as to whether the New York Statute of Frauds has been satisfied.

## III.  LEGAL STANDARDS

---

³       *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985).

⁴       Mosaid initially also objected to that part of the R and R that related to Matsushita but withdrew that objection prior to oral argument. (D.I. 247).

4

When reviewing the decision of a magistrate judge on a dispositive matter, the court conducts a de novo review. 28 U.S.C. § 636(1)(B); Fed. R. Civ. P. 72(b)(3). As a motion for summary judgment is dispositive, this Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court may accept, reject, or modify the recommendations of the magistrate judge. *Id.*

The parties do not dispute that New York law governs all of the relevant contracts at issue. When interpreting a contract under New York law, the Court must construe the agreement "to give effect to the intent of the parties as revealed by the language" of the contract itself. *Bolt Electric, Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000). "Where contracts are negotiated by counsel for sophisticated commercial parties, courts should interpret ambiguous language to realize the reasonable expectations of the ordinary businessperson." *Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 662 (2d Cir. 1994).

Whether a contract is ambiguous is a matter of law which can properly be resolved by summary judgment. *See Jackson Nat'l Life Ins. Co. v. Ladish Co., Inc.*, 1993 WL 43373, at \*3 (S.D.N.Y. Feb. 18, 1993); *see also Tsoukanelis v. Country Pure Foods, Inc.*, 337 F.Supp.2d 600, 605 (D. Del. 2004) (discussing New York contract law). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). If the nonmoving party fails to make a sufficient showing on an essential

5

element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The parties here have filed cross-motions for summary judgment. The filing of cross-motions "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Hsu v. Wolpoff & Abrams L.L.P.*, 2009 WL 2984277, at *4 (D. Del. Sept. 18, 2009) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). Thus, the Court is not required to grant summary judgment for either party. *See Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).

## IV. DISCUSSION

The ultimate issue is whether Lenovo has a license to patents under any of the four agreements at issue (the 1995 PLA, the 1999 PLA, the 2000 Agreement, and the 2002 PLA). The Magistrate Judge applied the *Winston* factors to each of the four agreements and concluded that Lenovo did not have a license to the Assigned Patents under the 1995 PLA or the 1999 PLA. With respect to the 2000 Agreement and the 2002 PLA, the Magistrate Judge concluded that summary judgment was inappropriate.

The *Winston* factors apply when determining whether a preliminary agreement is sufficient to bind the parties. *See Bernstein v. Harrah's Operating*, 661 F.Supp.2d 186, 199 (N.D.N.Y. 2009) ("In *Winston*, the Second Circuit created a four pronged test to determine whether parties, who orally agree to settle a matter but fail to fully execute documents to that end, intend to be bound by those oral representations."); *see also McElroy v. Genmark Alloy Refining Corp.*, 592 F.Supp.2d 508, 518 (S.D.N.Y. 2008); *North Fork Country, LLC v. Baker*

6

*Publ'ns, Inc.*, 436 F.Supp.2d 441, 445 (E.D.N.Y. 2006). The *Winston* factors, thus, apply when

there is no signed writing. *See North Fork*, 436 F.Supp.2d at 445; *see also Omega Eng'g, Inc. v.*

*Omega SA*, 414 F.Supp.2d 138, 146 (D. Conn. 2004). The threshold question here, therefore, is

whether there are signed writings enforceable against LSI and Agere.

Starting with the 2002 PLA, the Court concludes that it grants license rights to Lenovo

subject to certain conditions precedent being met. The Court further concludes that those

conditions precedent have been met and, accordingly, Lenovo is licensed to patents under the

2002 PLA.

The 2002 License Agreement provides, in relevant part, as follows:

> Notwithstanding the provisions of Section 2.03 of the [1995 PLA]
> and in addition thereto, AGERE agrees that upon request from
> IBM, it will license, without diminishing IBM's license, two
> divested entities of IBM that are divested on or before October 1,
> 2005, under the patents of AGERE licensed to IBM in [the 2002
> PLA], in accordance with the terms and conditions of [the 2002
> PLA], except that licenses to the divested entity shall be for
> products and services (and natural extensions thereof) sold or
> furnished by the divested entity prior to the divestiture from IBM.
> Said licenses shall be for eight years unless IBM extends the
> license pursuant to the terms of paragraph 1.01 (d) of [the 2000
> Agreement], in which case the license shall be for the life of the
> patents.

(D.I. 17, Ex. 4). The 2002 PLA contemplates an automatic license transfer because the contract

language expressly provides that, upon request from IBM, Agere *will* license two divested

entities of IBM if those entities are divested on or before October 1, 2005. The *Winston* factors,

therefore, are inapplicable because there is a signed writing enforceable against Agere.

In applying *Winston*, the R and R relied upon *In re Read-Rite Corp.*, 393 F. App'x 535,

539 (9th Cir. 2010). I do not agree that *Read-Rite* supports the application of the *Winston* factors

7

to the present case. First, the underlying agreement in *Read-Rite* expressly provided that the parties would enter into a "new agreement" and the parties "stipulated . . . that . . . Read-Rite and Hitachi needed to execute a licensing agreement." *In re Read-Rite Corp.*, 2007 WL 2318901, at *1 (N.D. Cal. Aug. 13, 2007). Unlike in *Read-Rite*, the agreements at issue here do not require that a new agreement be entered into. (*See* D.I. 91, Ex. 1 at ¶ 2; *id.*, Ex. 2 at § 1.01(c); *id.*, Ex. 5 at § 2.03; D.I. 100, Ex. 26 at § 2.8). Also, as the court found in *Read-Rite*, the parties' conduct there evidenced a "clear understanding that th[e] act [of signing] was an essential prerequisite to the document's effectiveness." *In re Read-Rite Corp.*, 2006 WL 2241107, at *4 (Bankr. N.D. Cal. June 19, 2006). The Court noted the parties exchanged multiple drafts and there were significant back and forth communications between IBM and Read-Rite. *Id.* at *3-4. Here, other than the June 23, 2005 letters, there were no significant communications between IBM or Lenovo on the one hand and LSI, Agere, or Lucent on the other hand.

The question then turns to whether the conditions precedent were met and whether an automatic license transfer occurred. It is undisputed that, on April 30, 2005, IBM divested the global business of its personal computing division to the Lenovo Group. (D.I. 17 at 16, ¶ 46). The divested entity became Lenovo Singapore. (D.I. 90 at ¶ 4). The first condition precedent – that the entity be divested on or before October 1, 2005 – is therefore met.

The second condition precedent – a request from IBM – is also met. In accordance with the 2002 PLA, on June 23, 2005, Betty E. Ungerman of Jones Day sent a written letter via certified mail (return receipt requested) to Agere Systems, Inc. at a Coral Gables, Florida address

8

provided in the 1995 PLA[5] and to the Senior VP and General Counsel in Allentown,
Pennsylvania, notifying Agere of the divestiture and its licensing obligations under the 2002
PLA. (D.I. 89, Ex. 8).

Agere acknowledges that the June 23, 2005 letter was received in Agere's mailroom in
Allentown but asserts that Lenovo never sent execution copies. (D.I. 252 at 44-45).[6] Agere,
therefore, argues that there is no license under the 2002 PLA because IBM's counsel never
followed through with sending execution copies or otherwise followed up and that it would be
"fundamentally unfair" to Agere to hold otherwise. (*Id.* at 56-58). Agere's arguments fail for
three reasons. First, the 2002 PLA does not require any further signed writings. The agreement
only requires a "request from IBM." (D.I. 17, Ex. 4). Second, the letter itself recognizes that
license rights already exist[7] and that the documentation would only memorialize the already
existing agreement. (D.I. 89, Ex. 8) ("The License Agreement provides that, in the event IBM
divests itself of an entity, upon request of IBM, Agere will license the entity on terms and
conditions set forth in the license agreement."). Third, such an interpretation would do away
with the entire purpose and reasonable expectations of the parties under the 2002 PLA. Under

---

[5]       The 2002 PLA incorporated generally the terms and conditions of the 1995 PLA.
(D.I. 17, Exh. 4).

[6]       Agere has asserted that the June 23, 2005 Letter was not sent within 60 days as
required by Section 2.03 of the 1995 PLA because it was not received in Agere's mailroom until
July 5, 66 days after the divestiture. (D.I. 126 at 12). Lenovo has submitted evidence that the
letter was in fact sent on June 28, 2005, within the 60 day timeframe. (D.I. 245 at Ex. B). Agere
has not offered any evidence to the contrary and, therefore, the Court considers it undisputed that
the letter was timely sent. (*See also* D.I. 252 at 82-85).

[7]       Although the letter was dated June 23, 2005, it requested that the effective date of
the license be April 30, 2005, that is, two months before the request.

9

LSI and Agere's proposed interpretation, LSI and Agere would have unilateral control and could extinguish its obligations to cross-license to divested entities by simply ignoring a request to execute a written instrument with the divested entity. Such an interpretation is wholly inconsistent with the express language of the agreement that provides "Agere *will* license [the divested entities.]" (D.I. 17, Ex. 4) (emphasis added).

Agere also argues that IBM and Lenovo's conduct following the divestiture indicates that they believed a separate agreement was required. (D.I. 126 at 9-10). Agere points to the June 23, 2005 letter to Agere as evidence that IBM and Lenovo understood that "no license would exist unless and until it was in writing and executed by both parties. (*Id.* at 10). This argument, however, also fails. Lenovo's course of conduct cannot negate the otherwise unambiguous terms of the 2002 PLA that provide for an automatic license transfer. In addition, the Ungerman letter is not inconsistent with Lenovo's assertion that the license existed whether it was "memorialized" in 2005 or not. Ms. Ungerman would not be the first lawyer to want "belts and suspenders," and having a clear up-to-date writing concerning the relationship of the parties could not have hurt.

With respect to Mosaid's claim that Agere breached the express warranty, Agere conceded at oral argument on the objections to the R and R that, if this Court concluded that Lenovo is licensed under the 2002 PLA, Lenovo has a license agreement with Agere.[8] (D.I. 252 at 73). Accordingly, the Court concludes that Agere breached Section 5.1(f) of the 2007 PAA because Lenovo is licensed under the 2002 PLA and, therefore, has a license agreement with

---

[8]    This concession mooted Mosaid's objection to the Magistrate Judge's construction of "license agreement with Agere" in the 2007 PAA.

Agere with respect to the Assigned Patents.

This does not end matters, as the third-party claims must be considered. Lenovo also claims a license under the 1995 PLA, 1999 PLA, and the 2000 Agreement. The Court, therefore, must analyze whether license rights to any patents exist under those agreements.

Turning to the 2000 Agreement, the Court concludes that it grants license rights to Lenovo. On September 30, 2000, IBM and Lucent entered into the 2000 Agreement that modified certain provisions of the 1995 PLA. (D.I. 17, Ex. 3). The 2000 Agreement provides that "[n]otwithstanding the provisions of Section 2.03 of the [1995 PLA] and in addition thereto," IBM and Lucent agreed that "upon request from the other party, each party will license, without diminishing the other party's license, two divested entities of the other party . . . under the patents of the non-divesting party licensed to the divesting party in the [1995 PLA], in accordance with the terms and conditions of [the 1995 PLA]," and "Section 1.01 [of the 2000 Agreement." *Id.* at § 1.01(a)). IBM agreed to license the two divested entities of Lucent (including Microelectronics, the predecessor to Agere) so long as the two divested entities "each agree to license the two entities divested from IBM in accordance with the terms of [Section 1.01(a) and (c)]." Lucent, in turn, agreed that "upon written request from IBM, [it] will license no more than two entities divested from IBM, pursuant to the provisions of [Section 1.01(a)], which entities are divested from IBM on or before September 30, 2005." *(Id.* at § 1.01(c)).

As with the 2002 PLA, the express language of the 2000 Agreement contemplates an automatic license transfer without requiring a separate writing. Again, the conditions precedent have been met because IBM's outside counsel sent the June 23, 2005 Letter to Lucent notifying Lucent of the divestiture of Lenovo and its licensing obligations under the 2000 Agreement.

(D.I. 89, Ex. 8), and IBM's divestiture to Lenovo occurred before September 30, 2005.

Agere argues that no transfer could have occurred because the patents had already been assigned by Lucent to Agere at the time of Lenovo's divestiture from IBM and, therefore, Lucent had no authority to license the patents in 2005. (D.I. 126 at 13). As Agere explains, Lucent divested Agere on February 1, 2001 and, as part of that divestiture, assigned all rights to certain patents to Agere, including the Assigned Patents. (*Id.* at 14). Lucent, therefore, had no right to license any of those patents in June 2005. (*Id.* at 14-15).

Agere's argument ignores that the 2000 Agreement was specifically entered into in anticipation of Lucent's divestiture of Agere. (D.I. 17, Ex. 3 at 1). The 2000 Agreement also expressly provides that Lucent's license to IBM's patents would not be diminished by virtue of its divestiture to Agere. (*Id.* at § 1.01(a)). Moreover, Agere expressly assumed the obligations of the 2000 Agreement. Specifically, Section 2.15(a) of the February 1, 2001 Separation and Distribution Agreement by and between Lucent Technologies Inc. and Agere Systems Inc. provides that Lucent "grants to Agere the right to share with Lucent and otherwise have the benefit of any license rights granted by any third parties to Lucent pursuant to any existing intellectual property license agreements, provided that such sharing does not in any way diminish or abridge the rights or benefits retained by Lucent." (D.I. 91, Ex. 4). In Section 2.15(g) of the agreement, "Agere agrees that it will fulfill any obligations that exist to a third party with respect to any intellectual property agreements to which the provisions of Sections 2.15(a) and (d) apply." (*Id.*). Accordingly, Lenovo became licensed to patents pursuant to the 2000 Agreement upon IBM's request in its June 23, 2005 Letter to Lucent.

The Court also concludes that the 1995 PLA provides rights to Lenovo as well. Section

12

2.03 provides that, "[i]f one of the AT&T PARTIES or IBM transfers a product line . . . then, after request by . . . IBM to one or more of the AT&T PARTIES, jointly with such third party, within sixty (60) days following the transfer and if such transfer includes at least one currently marketable product and tangible assets having a net value of at least one hundred million dollars ($100,000,000.00)." As with the 2002 PLA and the 2000 Agreement, this provision is unambiguous that a separate written agreement is not required. Moreover, the conditions precedent have been met. IBM transferred the business of its personal computing division to Lenovo in 2005. At least one currently marketable product and tangible assets had a net value of at least $100 million. (D.I. 90, ¶ 13 and Ex. 22). And, on June 28, 2005, IBM and Lenovo jointly notified both Lucent and Agere of the IBM divestiture and its licensing obligations under the 1995, 2000, and 2002 PLAs. (D.I. 245). Accordingly, Lenovo has rights under the 1995 PLA.

Finally, the Court addresses the 1999 PLA. Although Lenovo did not move for summary judgment on the 1999 PLA because LSI and Agere represented that the patents covered by the 1999 PLA do not relate to the Assigned Patents, LSI and Agere moved for summary judgment that Lenovo does not have license rights to *any* patents under the 1999 PLA. (D.I. 99). Lenovo, in turn, argued that to the extent the 1999 PLA covers any of the Assigned Patents, summary judgment should be granted in its favor. (D.I. 130 at 12). The Court, therefore, must analyze whether Lenovo is licensed to any patents under the 1999 PLA.

Section 2.8 of the 1999 PLA provides that "[i]f one party transfers a product line . . . and if such transfer includes at least one marketable product and tangible assets having a net value of at least twenty-five million US dollars ($25,000,000), then after written request . . . within sixty

13

(60) days following the transfer, the other party hereto agrees to grant a royalty-free license."

(D.I. 17, Ex. 2). As with the 2000 Agreement and 2002 Agreement, this provision is clear that an automatic license transfer will occur if the conditions precedent are met. Lenovo followed up with LSI and sent a draft license agreement on November 18, 2005. (D.I. 90, Ex. 15). Lenovo followed up again on April 24, 2006. (D.I. 90, Ex. 16). The parties never executed the agreement. However, as discussed with respect to the 2002 PLA, Lenovo's conduct cannot modify the unambiguous language of Section 2.8, which provides for an automatic license transfer. To find otherwise would mean that LSI could refuse to recognize licenses with Lenovo simply by refusing to memorialize a license. Section 2.8 does not allow such discretion to LSI and provides, instead, that LSI must grant a license.[9]

## V.    CONCLUSION

For the reasons set forth above, the Court adopts in part and overrules in part the R and R. Specifically, the Court adopts the R and R with respect to Matsushita and the 2005 PLA, as the parties did not object to those portions. The Court overrules the R and R with respect to the 1995 PLA, the 1999 PLA, 2000 Agreement, and 2002 PLA. Accordingly, Lenovo's Motion for Summary Judgment on Lenovo Singapore's Counterclaim and Count 3 of LSI Corporation and Agere Systems, Inc.'s Counterclaim is granted. (D.I. 87). Mosaid's Motion for Partial Summary Judgment is granted. (D.I. 92). LSI and Agere's Motion for Summary Judgment on Counterclaim Counts 1 and 2 is granted in part and denied in part. (D.I. 93). The motion is

---

[9]      The Court's conclusion that the 1995 PLA, 1999 PLA, 2000 Agreement, and 2002 PLA provided licenses to Lenovo makes it unnecessary to consider Agere's objection to the Magistrate Judge's application of the Statute of Frauds. These agreements are in writing. Therefore, the Statute of Frauds does not apply. *See* N.Y. Gen. Oblig. Law § 5-701(a).

14

granted insofar as it is addressed to Matsushita. The motion is otherwise denied. LSI and

Agere's Motion for Summary Judgment on Counterclaim Count 3 is granted in part and denied in

part. (D.I. 98). The motion is granted insofar as Count 3 is addressed to the 2005 PLA. The

motion is otherwise denied.

A separate Order, consistent with this Memorandum Opinion, will be entered.