IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOSAID TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-192-RGA-CJB |
| | ) | |
| LSI CORPORATION and | ) | REDACTED - PUBLIC VERSION |
| AGERE SYSTEMS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| LSI CORPORATION and | ) | |
| AGERE SYSTEMS LLC, | ) | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MOSAID TECHNOLOGIES INC., | ) | |
| LENOVO (UNITED STATES) INC., | ) | |
| LENOVO GROUP LTD., and | ) | |
| LENOVO (SINGAPORE) PTE. LTD., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

**LSI CORPORATION AND AGERE SYSTEMS LLC'S OPENING BRIEF
IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE MISUSE
OF AN INTERNAL LSI/AGERE DOCUMENT[1]**

OF COUNSEL:
David E. Sipiora
Daniel S. Young
Kristopher L. Reed
Miranda C. Rogers
KILPATRICK TOWNSEND &
STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
dfry@shawkeller.com
*Attorneys for Defendants and
Counterclaim-Plaintiffs*

Dated:  November 8, 2013

---

[1] In light of the Court's November 4, 2013 order directing that all motions must be filed by November 8, 2013, LSI/Agere are filing this motion now out of an abundance of caution. Should the Court prefer, LSI/Agere are prepared to submit this motion with the February 14, 2014 pretrial order in accordance with the page limits provided in Paragraph 7 of the scheduling order.  (D.I. 261).

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................1

II.    NATURE AND STAGE OF PROCEEDINGS ...................................................................1

III.   STATEMENT OF FACTS .............................................................................................2

     A.     The LSI/Agere Spreadsheet ...............................................................................2

     B.     MOSAID's Damages Theories ............................................................................3

IV.   ARGUMENT.....................................................................................................................4

     A.     The LSI/Agere Spreadsheet Had No Impact on MOSAID's Valuation of the Opportunities Associated with Licensing the Assigned Patents.........................4

     B.     MOSAID Wants To Use the LSI/Agere Spreadsheet To Circumvent the Court's Order Excluding Its "Lost Profits" Theory.............................................5

     C.     The Only Arguable Relevance for the LSI/Agere Spreadsheet Is Corroboration of MOSAID's Final Business Case. ..................................................................6

V.    CONCLUSION..................................................................................................................8

## I.       INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants LSI Corporation ("LSI") and Agere Systems LLC ("Agere") (collectively, "LSI/Agere") respectfully submit this motion to preclude MOSAID Technologies, Inc. ("MOSAID") from misusing an internal LSI/Agere document to introduce a late-disclosed damages theory at trial.

Following preclusion of its "lost profits" theory and the Court's postponement of trial, MOSAID supplemented its interrogatory responses to indicate that it now intends to rely on a confidential internal LSI/Agere document as the sole basis for yet another new theory of damages.  This despite the fact that this confidential internal LSI/Agere document did not influence MOSAID's pre-purchase valuation of the Assigned Patents in any way.  In truth, MOSAID's late identification of the LSI/Agere Spreadsheet as a purported independent basis for damages is nothing more than an attempt to circumvent the Court's order excluding its "lost profits" theory.  At most, the internal LSI/Agere document represents possible corroboration of MOSAID's internal valuation.  But under no circumstances can it serve as an independent basis for a damages calculation as MOSAID now alleges.

Therefore, LSI/Agere respectfully request that the Court preclude MOSAID from using LSI/Agere's internal document as anything more than alleged corroboration of MOSAID's Final Business Case.

## II.      NATURE AND STAGE OF PROCEEDINGS

On October 7, 2013, MOSAID served a supplemental response to LSI/Agere's Interrogatory No. 2, which requests that MOSAID "[d]escribe in detail the nature and total dollar amount of all damages You contend You have suffered as a result of Agere's alleged breach of

the 2007 PAA."[2] 

LSI-AGERE00024158-00024193 ("LSI/Agere Spreadsheet") is

.[5]  This

document was produced to MOSAID on January 14, 2011 – several years before the June 18,

2013 deadline set by the Court for disclosure of MOSAID's damages theories.  (*See* D.I. 261.)

Yet MOSAID never identified the LSI/Agere Spreadsheet as a supposed independent basis for

damages until after the Court excluded MOSAID's "lost profits" theory on September 9, 2013.

## III.   STATEMENT OF FACTS

### A.   The LSI/Agere Spreadsheet



---

[2] Rogers Decl., Ex. 5.
[3] *Id.*
[4] *Id.*
[5] Rogers Decl., Ex. 8.
[6] Rogers Decl., Ex. 1 at 120:7-123:10.
[7] *Id.* at 123:11-14.
[8] *Id.* at 136:12-21.

███████████████████████████████████████████████

███████████████████████████████████

### B.      MOSAID's Damages Theories

On June 18, 2013, MOSAID served on LSI/Agere the expert report of Dr. O'Brien ("O'Brien Report").[10]  In his report, Dr. O'Brien acknowledged that "the Court has ruled that Agere breached Section 5.1(f) of the 2007 PAA because Lenovo was licensed to the Assigned Patents," and opined on the damages that MOSAID has suffered "as a result of this breach."[11]

One of the two damages theories Dr. O'Brien advanced in his June 18, 2013 report was "lost profits."[12] With respect to this theory, Dr. O'Brien opined that ████████████████ ████████████████████████████████████████████████ █████████████████████[13]  On September 9, 2013, the Court excluded Dr. O'Brien's "lost profits" damages theory.  (Oral Order, September 9, 2013.)  The Court later confirmed its exclusion of Dr. O'Brien's "lost profits" theory at the September 11, 2013 pre-trial conference[14] and again at the September 13, 2013 emergency pre-trial conference.[15]

With "lost profits" out of the case, the Court held that damages must be calculated by determining what portion of the price MOSAID paid for the Assigned Patents is attributable to the expected opportunity to try and license Lenovo from February 2007 through April 2013.[16]

---

[9] *Id.* at 123:15-18.
[10] Rogers Decl., Ex. 2.
[11] *Id.* at ¶ 2.
[12] *Id.*
[13] *Id.* at ¶ 33.
[14] Rogers Decl., Ex. 4 at 52:8-10 ("**COUNSEL FOR LSI/AGERE**:  And the lost profits theory is out?  **THE COURT**:  Yes.").
[15] Rogers Decl., Ex. 3 at 55:11-14 ("What I think if I'm recalling it correctly your expert had two theories, what he called overpayment and los[t] profits.  What I said was los[t] profits is out.")
[16] Rogers Decl., Ex. 4 at 34:23-35:2 ("Okay, they paid what they paid.  How much of it was for something where they didn't get what they were promised?); 36:22-37:1 ("But the way I would

## IV.    ARGUMENT

### A.    The LSI/Agere Spreadsheet Had No Impact on MOSAID's Valuation of the Opportunities Associated with Licensing the Assigned Patents.

As the Court repeatedly has held, the assessment of damages in this case must be centered on the purchase value MOSAID ascribed to the opportunity to try to license Lenovo to the Assigned Patents – an opportunity it did not receive due to the alleged breach.[17]  Yet it is undisputed that MOSAID did not and could not have had access to the confidential internal LSI/Agere Spreadsheet prior to purchasing the Assigned Patents from Agere in 2007.  This was acknowledged by MOSAID's expert Dr. O'Brien at his deposition:



Therefore, the LSI/Agere Spreadsheet had zero impact on the purchase value MOSAID ascribed to the opportunity to try to license Lenovo to the Assigned Patents.  Accordingly, under the damages regimen set forth by the Court,[19] the LSI/Agere Spreadsheet has no direct relevance to the calculation of damages in this case.  Therefore, the Court should preclude MOSAID from proffering the LSI/Agere Spreadsheet as an independent basis for calculating damages at trial.

---

say it is [MOSAID] paid the price they paid.  Did they get a hundred percent of what they bought with that price?").

[17] *See id.*

[18] Rogers Decl., Ex. 9 at 333:4-17.

[19] Rogers Decl., Ex. 4 at 34:23-35:2 ("Okay, they paid what they paid.  How much of it was for something where they didn't get what they were promised?); 36:22-37:1 ("But the way I would say it is [MOSAID] paid the price they paid.  Did they get a hundred percent of what they bought with that price?").

**B.      MOSAID Wants to Use the LSI/Agere Spreadsheet to Circumvent the Court's Order Excluding Its "Lost Profits" Theory.**

Given the nature and timing of MOSAID's disclosure of this new damages theory, there is little doubt that MOSAID is trying to use the LSI/Agere Spreadsheet to circumvent the Court's order excluding MOSAID's "lost profits" theory.  Although the LSI/Agere Spreadsheet was produced to MOSAID on January 14, 2011, MOSAID never identified the document as a purported basis for damages until after the Court excluded MOSAID's "lost profits" damages theory on September 9, 2013.

Specifically, the first suggestion that MOSAID would make such an argument was at the September 13, 2013 emergency pre-trial conference:



This new theory was formalized in MOSAID's October 7, 2013 supplemental interrogatory response, in which MOSAID alleged                                                         [21]

In other words, MOSAID intends to argue to the jury that it is entitled to damages equal to                                                                                               .[22]  This argument is nothing more than a rehash of MOSAID's excluded "lost profits" theory, in which Dr. O'Brien erroneously opined that                                                                                                                            ."[23]  The Court found that this first "lost profits" theory was

---

[20] Rogers Decl., Ex. 3 at 31:21-32:3.
[21] Rogers Decl., Ex. 5; *see also* Rogers Decl., Ex. 6.
[22] Rogers Decl., Ex. 1 at 120:7-123:10.
[23] Rogers Decl., Ex. 2 at ¶ 34.

unreliable and properly excluded it.[24]   (Oral Order, September 9, 2013.)  MOSAID's new "lost

profits" theory based on the LSI/Agere Spreadsheet is even less reliable than the first, as it is

premised on an analysis that pertains to far more than the Assigned Patents and was compiled

well before execution of the 2007 PAA.[25]   The Court should not permit MOSAID to make an

end-around the Court's September 9 Order by presenting a late-disclosed "lost profits" theory to

the jury under the guise of the LSI/Agere Spreadsheet.

### C.   The Only Arguable Relevance for the LSI/Agere Spreadsheet Is Corroboration of MOSAID's Final Business Case.

Indeed, the only possible relevance of the LSI/Agere Spreadsheet would be as alleged

corroboration of the forecasts from MOSAID's Final Business Case.  The Court has indicated

that "I do think that the final business case is a staple foundation for reasonable estimate of

damages.  But that also doesn't mean that the final business case is wholly writ."[26] The

LSI/Agere Spreadsheet arguably could be minimally relevant as alleged corroboration for the

forecasts in MOSAID's Final Business case.  Indeed, when asked point-blank at the September

11 pre-trial conference about the LSI/Agere Spreadsheet, the only potential relevance cited by

MOSAID's counsel was corroboration:



---

[24] *See also* Rogers Decl., Ex. 4 at 52:8-10.
[25] *See* Rogers Decl., Ex. 1 at 120:7-123:10; Rogers Decl., Ex. 9 at 329:17-22 ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ )
Rogers Decl., Ex. 4 at 39:18-23.
[27] *Id.* at 41:8-12.

That being said, the LSI/Agere Spreadsheet provides weak corroboration at best for the MOSAID Final Business Case.



Nonetheless, LSI/Agere acknowledge that a non-frivolous argument can be made that the LSI/Agere Spreadsheet has some nominal probative value as tangential corroboration for the MOSAID Final Business Case.[31]  However, for the reasons described previously, there is no possible way that the LSI/Agere Spreadsheet can serve as the basis for an independent damages calculation as MOSAID now argues.  Therefore, the Court should preclude MOSAID from relying on the LSI/Agere Spreadsheet for any purpose other than alleged corroboration of MOSAID's Final Business Case at trial.

---

[28] Rogers Decl., Ex. 1 at 124:24-125:10; *see also* Rogers Decl., Ex. 7 at 151:2-15, 153:12-21.
[29] Rogers Decl., Ex. 1 at 121:24-122:25.
[30] *Id*. at 123:15-18.
[31] MOSAID contends that the LSI/Agere Spreadsheet "is not objected to" and is "as good as admitted."  (Rogers Decl., Ex. 3 at 34:11-21, 42:17-43:4.)  To the contrary, LSI/Agere did in fact object to the LSI/Agere Spreadsheet as a trial exhibit in the proposed pre-trial order filed on August 16, 2013.  (D.I. 295 at Ex. A1.)  Indeed, these objections were based on MOSAID's disclosure of its first two damages theories, neither of which relied on the LSI/Agere Spreadsheet.  However, given MOSAID's subsequent disclosure of their intent to misuse the LSI/Agere Spreadsheet as the basis for a new "lost profits" theory on October 7, 2013, LSI/Agere further object to the introduction of the LSI/Agere Spreadsheet for any purpose other than purported corroboration at trial.

## V.    CONCLUSION

For the reasons articulated above, LSI/Agere respectfully request that the Court preclude

MOSAID from using the LSI/Agere Spreadsheet as the basis for an independent damages

calculation, and disallow reference to the LSI/Agere Spreadsheet for any purpose other than

alleged corroboration of the forecasts set forth in MOSAID's Final Business Case.

                                        Respectfully submitted,

OF COUNSEL:                             */s/ David M. Fry*
David E. Sipiora                        John W. Shaw (No. 3362)
Daniel S. Young                         Jeffrey T. Castellano (No. 4837)
Kristopher L. Reed                      David M. Fry (No. 5486)
Miranda C. Rogers                       SHAW KELLER LLP
KILPATRICK TOWNSEND &                   300 Delaware Avenue, Suite 1120
STOCKTON LLP                            Wilmington, DE 19801
1400 Wewatta Street, Suite 600          (302) 298-0700
Denver, CO 80202                        jshaw@shawkeller.com
(303) 571-4000                          jcastellano@shawkeller.com
                                        dfry@shawkeller.com
Dated:  November 8, 2013                *Attorneys for Defendants and*
                                        *Counterclaim-Plaintiffs LSI Corporation*
                                        *and Agere Systems LLC*

8

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on November 8, 2013 this document was served on

the persons listed below in the manner indicated:

### BY E-MAIL

Philip A. Rovner
Jonathan A. Choa
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
provner@potteranderson.com
jchoa@potteranderson.com

Frederick L. Cottrell, III
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
cottrell@rlf.com


Brian A.E. Smith
Henry C. Bunsow
Jeffrey Chen
Joseph Fraresso
BUNSOW DE MORY SMITH & ALLISON LLP
55 Francisco St., Suite 600
San Francisco, CA 94133
bsmith@bdiplaw.com
hbunsow@bdiplaw.com
jchen@bdiplaw.com
jfraresso@bdiplaw.com

Jennifer Trusso
SHEPPARD, MULLIN, RICHTER
 & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
jtrusso@sheppardmullin.com


*/s/ David M. Fry*
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
dfry@shawkeller.com
*Attorney for Defendants and Counterclaim-*
*Plaintiffs LSI Corporation and Agere Systems LLC*